## NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY *v.* GORDON.

No. 11484.  December 2, 1936.  Rehearing denied December 11, 1936.

*Robert L. Russell* and *Hendrix & Buchanan,* for plaintiff.

*R. H. Kimball* and *Clifford Pratt,* for defendant.

ATKINSON, Justice.  1.  A policy of life insurance was issued to Judson L. Gordon on March 7, 1935.  Attached to the policy as a part thereof was a written application by the insured, dated February 15, 1935, which contained the following:  "6.  To what extent do you now, or have you in the past, used intoxicants, morphine, cocaine, or other habit-forming drugs?  Answer: No.  .  . 18.  Have you ever had any ailment or disease of:  (A) Brain or nervous system?  Answer: No.  (B) Heart or lungs?  Answer: No.  (C) Skin, middle ear, or eyes?  Answer: No.  (D) Have you ever had rheumatism, gout, or syphilis?  Answer: No.  (E) Have you ever raised or spat blood?  Answer: No.  (F) Have you ever consulted a physician for any ailment or disease not included above?  Answer: Yes, biliousness.  Two attacks in 1933. .  .  23.  State names and addresses of physicians you have ever consulted, and give the occasion by reference to question numbers and letters above?  Answer: Dr. W. T. Randolph, Winder, Ga. No. F above.  .  .  26.  I hereby agree and declare on my own behalf and in behalf of any person who may have or claim any interest in any policy issued hereon:  (1)  That each of the statements contained herein is full, complete, true, and without exception, unless such exception is noted, and made as inducements to the execution of a policy of life insurance for which this is an application."  The application being attached to the policy as a part and basis of the contract of insurance, the above statements from the application, under previous rulings of this court, are to be deemed warranties as to the truth of the answers to the questions propounded, and "any variation in any of them, which is material, whereby the nature or extent or character of the risk is changed, will avoid the policy, whether the statement was made in good faith or wilfully or fraudulently."  *Supreme Conclave* ·

*Knights of Damon* v. *Wood,* 120 *Ga.* 328 (47 S. E. 940), and cit.; *Supreme Lodge Knights of Pythias* v. *Few,* 138 *Ga.* 778 (76 S. E. 91); *New York Life Insurance Co.* v. *Hollis,* 177 *Ga.* 805 (171 S. E. 288); *Northwestern Life Ins. Co.* v. *Montgomery,* 116 *Ga.* 799 (43 S. E. 79); *Empire Life Insurance Co.* v. *Jones,* 14 *Ga. App.* 647 (82 S. E. 62); Code, §§ 56-820, 56-821, 56-904, 56-911. The case differs from *Torbert* v. *Cherokee Insurance Co.,* 141 *Ga.* 773 (82 S. E. 134), and similar cases, where the application was not attached to the policy or referred to therein, and the misrepresentations must have been fraudulently made to void the policy.

2. The uncontradicted evidence shows untruthfulness of answers to questions as to consultation of physicians for ailments as mentioned in questions 18(F) and 23, in that the answer to the first-mentioned question was: "Yes. Biliousness. Two attacks in 1933," and the answer to the last-mentioned question was: "Dr. W. T. Randolph, Winder, Georgia," whereas from August 23 to September 15, in 1931 or 1932, he was in bed for illness caused by excessive use of alcohol, and he was treated for such illness by Dr. W. R. McGinty of Moultrie, Georgia. These answers were material to the risk, and bore direct relation to the ultimate loss caused by the death of the insured on September 2, 1935 (as stated in the proof of death), from acute alcoholic poisoning. In the circumstances mentioned the policy of insurance was void. The evidence demanding a finding that the above-mentioned answers to the questions propounded in the application for the policy of insurance were untrue, and that they materially affected the risk as indicated, the provisions of the Code, § 56-822, are not pertinent to the case, the language being: "A failure to state a material fact, if not done fraudulently, shall not void the contract; but the wilful concealment of such a fact, which would enhance the risk, shall void the policy."

3. The evidence did not authorize a finding that the medical examiner knew, before issuance of the policy, that the insured drank whisky to such extent that he had to be treated for acute alcoholism.

4. It is immaterial that the company after the death of the insured mailed to him a premium notice.

5. In a suit upon a life-insurance policy where the insurance company defends in good faith, damages and attorneys' fees may

not be recovered. *Southern Mutual Insurance Co.* v. *Turnley,* 100 *Ga.* 296 (27 S. E. 975); *German American Mutual Life Association* v. *Farley,* 102 *Ga.* 720 (29 S. E. 615); *Empire Life Insurance Co.* v. *Allen,* 141 *Ga.* 413 (81 S. E. 120).

6. In a suit instituted by an insurance company to cancel a policy of insurance, to which the beneficiary filed an answer in the nature of a cross-action for the amount of the policy, and on the trial the pleadings and the evidence showed the case as indicated above, a verdict in favor of the beneficiary for the amount of the insurance, with damages and attorney's fees, was unauthorized by the evidence, and it was erroneous to refuse a new trial on the general grounds of the motion. The special grounds are controlled by the principles hereinbefore announced.

*Judgment reversed. All the Justices concur.*